The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning everyone. The first argued case is No. 20, 1893, Laird v. Department of Veterans Affairs. Mr. Solomon, proceed. Good morning and may it please the court. This is a case where we have multiple things going on as far as the ex parte communications. There are two different specific ex parte communications that I'd like to focus on, specifically the ex parte communication with the Douglas factor analysis, as well as the ex parte communication with the previous investigation that the deciding official ordered and had full access to. While the evidence file contains only redacted and partially included portions of that same investigation. Mr. Solomon, this is Judge Lurie. I gather you're not contesting the merits, just procedure, is that correct? Your Honor, I think this case is something where there is, as the administrative judge found, they actually found several of the charges were unsupported. The issue is when there are seven charges and one of the charges is AWOL and it's undisputed that, you know, that this layer was not there on those days. If we do not have a finding that the judge misinterpreted the law, then it's kind of hard to proceed on the facts, especially in a whistleblower case such as this where we think that, yes, there are certain things that the agency could have found, but it was disproportionate to this employee, whereas they wouldn't have brought disciplinary action, much less removal against other similarly situated employees had they not been engaging in protective activity. So primarily we are looking at the procedural defect, especially because we think, in particular with the Douglas factor analysis, it is so glaring. In this case, there is a Douglas factor analysis that's included as part of the evidence file. It's actually signed a day after the proposal was actually issued. There are several findings by the administrative judge that are just incorrect based on the record. For example, stating that there was no mention in the record of any sort of discussion of the CBA entitling this layer to receive the evidence file, even though that was included. Mr. Salma, I think we need to unpack this a little bit so we know exactly what your procedural errors are that you're claiming. I mean, with respect to whether she received the information about the AWOL charge, didn't the administrative judge make an express fact finding that she did actually receive that material? Yes, Your Honor. There was a fact finding. It is based on testimony, and it does appear to be based on kind of a more in-depth discussion of what the judge was actually looking at. It appears to conflate issues together where the judge in this case did kind of take the opinion that the fact that the AWOL was included as part of the specifications and then also the fact that Ms. Layer received the previous proposed removal, which had much of the same evidence and was generally on notice and was able to submit a reply that the evidence file was received. As far as the Douglas factor analysis- Well, with respect to the evidence file then, so what you're saying is that you're asking us to overturn an express fact finding, right? Well, I have two ways of looking at it, but yes, I am. Okay. What did she not know about the AWOL charge? Well, Your Honor, I was focusing more on the other two charges here. What she bases this off of is there was one employee in particular that says that on the day of the proposal that she made a copy of the evidence file and provided it to Ms. Layer. So that fact finding by the judge would apply to the AWOL charge, even though Ms. Layer disputes ever receiving that, even though she then sent an email request asking for the evidence file, which wasn't received, and even though she says in her response to the removal that she never received the evidence file, there is a fact finding that she received notice of the evidence for the AWOL charges. However, as I pointed out earlier, the Douglas factor analysis isn't dated until the day after that meeting was set to take place. So even on the extraordinarily high standard for overturning a factual determination by an administrative judge, I think it's met here to the extent that her decision does contemplate the Douglas factor analysis as well, because, as I mentioned, that wasn't dated until the day after. The proposing official testified that that was not an error. That was correct. He had not completed it until the day after. And, you know, the only evidence that was ever... Didn't they offer to let her come to HR to see anything she wanted to see, and she decided not to? So there's a couple different complications there. One is that the agency did not afford the opportunities given within the collective bargaining agreement. As she was a bargaining unit employee, it said that she was just supposed to, as a matter of course, receive the evidence file with the proposal, and that was never done. She also sent an email requesting the evidence file, and then put again in her response the proposed removal that she never received the evidence file. So, yes, while there was communication that she could review it at HR, she wasn't entitled to a copy of it without having to do so. She did request it via email, did not grant it, and then brought it up several times that she didn't have the evidence file. But it was all available to her, right, and she chose not to go look at it? Well, she was... So, once again, there's several complicating factors here, including that she was only, you know, specifically in that city for the date the proposal was issued, and then she made that request via email partially because she wasn't even in the same city as the evidence file, so it would have been impractical. As I mentioned, it was... She is entitled per the master agreement to receive the evidence file as a matter of course, and she did request it, and it was never provided. Okay, but she wasn't in the city because she was somewhere else where she had denied being, correct? I'm trying to unpack your question there. She wasn't in the city... Well, you say she wasn't in the city even though she had told her supervisor that she was, right, and she was directed to be there, and that's the whole point. She was AWOL because she chose not to be in the city where she was supposed to be. Well, yes, that relates to the AWOL charges. We're talking about after the receipt of the proposed removal. Okay. So what... On the Douglas factor analysis, the... It was... You say it wasn't done until the day after, but it was done. In fact, the record is very clear. It was done. It just... The person who was in charge of it just forgot to sign it, so they had to go back to him to get it signed, but it was there, and it was there in hard copy, was it not? Well, his testimony is that he hadn't even reviewed it prior to him reviewing it for signature, but also Ms. Lair's testimony, you know, it does contravene testimony that she received any sort of copy of it, and, in fact, she never received the evidence file at all. The only evidence file she received was for the first proposed removal, which actually was issued under 714. That had to be rescinded, 38 U.S.C. 714, the Accountability Act for the Department of Veterans Affairs, and that doesn't require Douglas factor analysis, so the Douglas factor analysis wasn't provided there, and then when this was reissued, there was no Douglas factor analysis done, so they had to do it after the fact. There is no actual support anywhere in the record that confirms that this was actually completed at any point before, you know, it was signed the day after the proposal was issued. Well, but AJ made credibility findings with respect to that and found that it was completed, right? Yes, there is a credibility finding to that extent. However, that doesn't take away from the fact that it wasn't actually issued to Ms. Lair, and Ms. Lair's testimony, in addition to the proposing official's testimony, suggests that it was never completed until after that date, and once again, coupled with the fact that Ms. Lair emailed saying that she didn't have the evidence file and requesting it, and then put in her response to the proposed removal that she never received the evidence file. Obviously, at that point, the deciding official was on notice that there was an issue here and did not do anything to try to rectify the situation, went forward and ruled on the removal. And then on top of specifically the Douglas factor analysis, the other issue that we have is the agency conducted an investigation that was coupled with a plethora of transcripts and summaries that were included as part of the evidence file, but only in portions, and that investigation was actually ordered by the director who had access to the full investigation, but only the select portions that were provided to Ms. Lair were in the evidence file, so she wasn't able to review potentially helpful or potentially harmful information that the deciding official had access to that could have shaped her decision that Ms. Lair never receives. Thank you. Okay. Any other point, Mr. Solomon, that you want to raise in your argument in chief? No, Your Honor. Thank you. All right. We'll save your rebuttal time. We'll hear from Mr. Carhart. May it please the Court, this Board's decision should be affirmed. The Board sustained five charges of wrongdoing that the agency brought against Ms. Lair and determined that removal was an appropriate penalty. On appeal, Ms. Lair raises challenges as to the adequacy of the notice she received and whether removal was an appropriate punishment for her misconduct, but Ms. Lair has provided no reason to disturb the Board's conclusion. To begin with, Ms. Lair hasn't identified any due process right that was violated. This is for two reasons. First, the Board concluded, as the Court's pointed out, as a factual matter, that Ms. Lair received all of the evidence that the agency relied upon. This factual finding is supported by substantial evidence in the record. Specifically, it's supported by the fact that Ms. Lair doesn't contest that she received all of the evidence supporting six of the seven charges against her, each charge except the AWOL charge. Counsel, I'm trying to sort something out. The first time around, the agency proposed removal under Title 38, Section 714, and then the second time, they proposed removal under Chapter 75 of Title 5. Why is that? Why change the course? Well, the agency changed course after getting notice from the OSC that they could proceed with the removal. The OSC did say that there are no further obstacles to removal under 714, but the agency nevertheless proceeded under Chapter 75. Well, it's a different burden of proof for the government, right? Right. It's not clear, to my knowledge, it's not clear in the record what the agency's thinking was there, but Ms. Lair hasn't challenged the Board's decision that the specifications are... Okay, I was just curious. Understood, Your Honor, that the specifications under Chapter 75 were sustained here. To continue with what is undisputed that Ms. Lair did receive, as Judge O'Malley pointed out, she also doesn't contest that she received a notice setting forth the charges and proposing that she be removed, and that this notice invited her to go to an HR office and view the evidence against her, which she did not do, and then set forth the dates and times when she was alleged to have been AWOL. Now, with respect to the evidence that Ms. Lair alleges was withheld, Pamela Hoffman, who is an HR employee, testified before the Board that she provided Ms. Lair with the entire evidence file on August 29, 2018. Her testimony is at Appendix 2892 and 2893 of the record. Ms. Hoffman's testimony is supported by testimony from Ms. Hoffman's supervisor, Timothy Hartwell, who testified that he instructed Ms. Hoffman to provide the evidence file to Ms. Lair on August 29, 2018, and that he saw Ms. Hoffman making a copy of the evidence file that same day. Mr. Hartwell's testimony is at Appendix 3091 and 3092. What about the Douglas Factor memo, though? If it wasn't finalized until the following day, doesn't that raise a question about whether she got everything that she needed? Well, Ms. Hoffman testified before the Board that she had noticed that Dr. Leitchard's signature was missing either the day she gave the evidence file to Ms. Lair or the day after, after she provided the evidence file to Ms. Lair, and that she then, once she realized this error, she obtained it from Dr. Leitchard, who was the proposing official, the next day. The Board noted this testimony, and it supports Ms. Hoffman's other testimony that she provided the evidence file to Ms. Lair on August 29, 2018. Ms. Hoffman's testimony is at Appendix 2905-2906, related to this point. What about the fact that she was found, that they did not find several of the charges sustained? Does that impact where we are with respect to the actual removal penalty? Well, because the Board sustained five out of the seven charges, and this moves to Ms. Lair's other contention, which relates to the way the Board weighed the Douglas factors, the Board's authority is to assess what the maximum reasonable penalty is in light of the charges that were sustained. As long as the agency hasn't expressed that it wishes for a lesser penalty to be provided, to be meted out, which the agency, the Board found, did not do in this case. So the Board looked at the five charges that were sustained and assessed whether removal was the appropriate penalty here. The Board's analysis considered the appropriate factors here. The Board independently weighed those factors, and the Board concluded that removal was appropriate. In Ms. Lair's opening brief, she argues in a conclusory fashion that there were certain factors the Board misapplied. This is reading from page 24 of Ms. Lair's brief, but she hasn't developed any arguments in the way that the Board misapplied those factors. To the extent she does develop any arguments in her reply brief, those arguments are waived because they were raised for the first time on reply. And even if they hadn't been waived, what they amount to asking this Court to do is to re-weigh the Douglas factors differently than the Board did, which, as this Court's precedent acknowledges, is not the Court's function. With respect to the ones that weren't sustained, I think the AJ found that the co-workers were actually not being honest. Why doesn't this just smack of a bunch of co-workers going after each other and that maybe there should have been a little bit more assessment of what the motivation was? Even if it wasn't whistleblower, it might have just been personality conflicts. Well, the co-workers whose testimony that the Board raised questions about, they were not the co-workers whose testimony is relevant to the procedural arguments here. I just want to make that point at the outset. And the charges that were sustained were based on not just testimony but also the Board's review of the documents and the testimony of supervisors that the Board found had no incentive to retaliate against Ms. Lair, no reason to single her out. But the supervisors had, over all the years, given her an outstanding rating. So just somehow, almost all of a sudden, after 18 years, there seems to be this massive response. How does one cope with that? Well, Your Honor, there wasn't just one instance of misconduct that brought about these charges. There were numerous instances, including a finding substantiated by the Board that she had testified dishonestly before the AIB and her decision to not show up for work for eight days. So that does suggest that there was a change. But the evidence of intentional misconduct here is strong. And Ms. Lair, again, doesn't challenge any of the substantiated findings of wrongdoing. She did raise, as an affirmative defense, a whistleblower argument. But the Board concluded that there just wasn't evidence of malice on the part of the deciding official here, such that it would constitute a valid whistleblowing affirmative defense. And Ms. Lair hasn't challenged that Board conclusion on appeal. And she would have been removed anyway, right? Right, exactly. The Board concluded that she would have been removed anyway because the seriousness of the misconduct was sufficient that removal was appropriate, in addition to the fact that the deciding official here had no malice against her. So I will just briefly, if I could go back to Ms. Lair's arguments related to notice, with respect to the Douglas Memorandum, I would point out, too, that the notice that she did receive, that she acknowledges receiving in August 2018, which is at Appendix 158, does note that there was a Douglas analysis that was done in connection with the proposal to remove her. And in addition to also telling her that she could go review all the evidence that the agency relied upon in a particular HR office. So Ms. Lair can't dispute that she was aware of the existence of a Douglas Memorandum and aware that she had the right to review it by going to an HR office, but she chose not to do so. Her testimony where she addresses this before the Board is at Appendix 3155, and she says she didn't want to go to the office to review it. That's the basic extent of her explanation. But doesn't the agreement, the regulations, say that she will be provided with that file, not that you can go and get it if you take the initiative? The CBA does say that employees, upon request, can obtain a copy of the evidence that's relied on by the agency. As a factual matter, the Board concluded that she did receive all of this evidence that the agency relied upon. But as a matter of fact, the Board did conclude that she had received all that evidence, so that provision was not violated based on the Board's factual findings. Even assuming that it was to establish a due process violation, Ms. Lair would have to show that the evidence was new and material, and she doesn't point to any specific factors considered in the Douglas Memorandum that she says would have been new and material, or she doesn't point to any way in which her response would have been different if she knew specific information in the Douglas Memorandum, which is at 169 to 171 of the record. You're not asking us to find an unharmless error that if she actually had done or been provided with something that she was entitled to be provided with, that it doesn't matter if there was nothing there that would have changed anything? No, Your Honor. To be clear, what we're arguing is that even if the Court overturns the Board's factual findings related to whether she'd received the evidence file, Ms. Lair still has the burden of showing that the information that wasn't provided to her is new and material under the Stone Ward standard. Our contention is that she hasn't met that burden here because she hasn't pointed to any language in the Douglas Memorandum that would have affected her reply and hasn't pointed to any way in which her reply would have been different if she had received the Douglas Memorandum. So you are saying that it depends on the content of what was in the evidence file, but if she didn't receive it on her position, how does she know whether there's new and material evidence there? Well, she could have... To be clear, this assumes that the Court overturns the factual finding of the Board. In that case, she could have gone to the HR office and obtained the evidence if she wanted to. Now, there is evidence in the record showing that Ms. Hoffman, who is the HR employee that handled this, didn't respond to an email from Ms. Lair, but there's also no indication that Ms. Lair followed up on that email. So all this really... This renders the Board's factual finding... This is further support for the Board's factual finding in the sense that if Ms. Lair really hadn't received any of the evidence that was being relied upon for her removal, it's implausible that she wouldn't go and make further efforts to obtain it. She doesn't say any of the evidence. She says she didn't receive all of the evidence. She criticizes the date on which the Douglas Factor evidence consideration, all that shows in the record, as I recall, is that writing was entered into or signed after she was given the notice. That's correct, Your Honor. Ms. Hoffman did address that discrepancy in her testimony, but that is Ms. Lair's argument. With respect to the Douglas Memorandum, my point was just that she knew of the existence of the Douglas Memorandum based on the notice that she did receive. But notice says there exists a Douglas Memorandum? I don't think so. So, Your Honor, this is on page 156 of the... Oh, excuse me, 158 of the appendix. And it notes that the notice supplied to Ms. Lair notes that the evidence file lists aggravating and mitigating factors, including prior discipline, the deciding official may take into account. And then it says, please see attachment Douglas factors for factors that I have taken into account as proposing official. Now, there's a factual dispute about whether Ms. Lair received the attachment itself, but the notice did put her on notice that there was a Douglas factors analysis that was done. All right. That's not attached in our appendix, right? Correct. Correct. Again, there is a factual dispute about whether she did receive the attachment. And the Board concluded that she'd received all of the evidence in the evidence file, including the Douglas factors analysis. But Ms. Lair disputes that factual conclusion. Any more questions for Mr. Carhart? No. No. All right. Thank you, Mr. Solomon, of your rebuttal time. Thank you, Your Honor. So, separately from the investigation I was called for by the director I was discussing earlier, Ms. Lair's whistleblower activity actually resulted in a medical inspector's investigation that was internal to the agency but external to the medical center. And one of the things they pointed out was there's actually, regarding this behavior, it was brought up that we have years and years of the demaculate record in service. It was brought up that for all of these issues that the agency was identifying as her performing correctly, there were no procedures in place prior to the agency detailing Ms. Lair for these alleged deficiencies. So she was not previously on any sort of notice. The agency took no effort to educate Ms. Lair or to put procedures in place and then hold Ms. Lair to those procedures, but instead just detailed Ms. Lair and then eventually terminated her without giving her an opportunity to correct those behaviors. Are you saying it wasn't clear to her that it was inappropriate for her, in her position, not being a physician, not being a radiologist, to actually change the reports? So that's actually a pretty nuanced analysis you would have to do and go through the actual... No, why is it nuanced? There's no debate about that. She changed the reports on that doctor, right, that were submitted by that doctor. She made the minimist corrections, and I don't believe there's any sort of, other than the proposing and deciding official, as well as obviously the administrative judge finding in their favor, there's no support through the OMI that any of this was actually medically improper or anything like that. Well, her own former supervisor and good friend conceded that it was improper. I would have to look at the specific concession as to, you know, there has been, my point is that there's been debate on that, so it's difficult for me to just say as a blanket statement that, you know, this is clear or not clear. Obviously, for the medical professionals, Congress sought out to have a different process. Well, let me ask you this. There is no debate over whether she originally said she never made a change and then later conceded that that was an untrue statement. I think the point there, though, is that as far as when she was accused of changing a medical record, what she had done, which was once again a correction, where she wasn't actually giving any sort of medical input. She was just fixing, you know, things as simple as the doctor putting the wrong name on something. She just corrected it, corrected the record. Putting a wrong name on a patient's file? That's pretty serious, right? Well, I mean, and that's why it was corrected. And this is something that has been done at this medical center by people other than Ms. Lair with no consequence is one of the issues that we have here. But for things where it's an unequivocal, clear error, where it's just a clerical error by the physician. Well, she doesn't deny the lack of candor charge, correct? I mean, she denies that originally, you know, when posed with that question. Are you talking still specifically about this original denial of? Yeah, she said she never changed anything at all. And then she later went back and said, okay, maybe I did, but it was administrative. And then she conceded that there was a whole process for changing records and correcting records that she didn't follow. Yes, we absolutely concede that she did change the records for the administrative reasons. The dispute, though, in our position is that when the question was originally posed, the idea of changing records was something that was, you know, considered that was separate from what she was doing as far as making those kind of de minimis administrative fixes. You know, she didn't consider that to be any sort of change in record. As far as whether the Douglas factors was new and material, from a case-specific standpoint, the deciding official specifically states that her decision was partially based on the aggravating factors considered by the proposing official. And had the deciding official failed to do any sort of weighing of the Douglas factors, this would not have been considering the efficiency of the service and the removal would have been reversed. And for that reason, it's quite clearly material, especially as Ward expands the Douglas factor analysis, or the question of new material specifically to the penalty analysis. And then finally, just as an aside, unrelated to my counter, the 714 switch was brought up earlier. And the opposing counsel wasn't quite clear from the record. I just happen to know that that was based on the fact that despite this being prior to Sayers versus Department of Veterans Affairs, OGC in this case took the position that it was problematically retroactive and that might interfere with sustaining removal under 714. So they switched it to Chapter 75 for retroactivity reasons. Okay. Thank you. Any more questions for Mr. Solomon? No. No. Okay. Thank you. Our thanks to both counsel. The case is taken under submission. Thank you.